Matthias, J.
Essentially, the plaintiff attacks the legislation on two grounds, first, that it infringes upon certain of his fundamental liberties, and, second, that it conflicts with certain statutes of the state and is beyond any power granted to municipalities by the laws and the Constitution of Ohio.
The police power is vested in municipalities by Section 3, Article 18 of the Ohio Constitution, which is as follows:
“Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.”
By Sections 3616 and 3646, General Code (Section 715.37, Revised Code), municipal corporations are authorized “to provide for the public health.”
The basic question presented by this case is whether a municipality has the authority under its police power, in relation to public health, to add inorganic fluoride chemicals to its water supply, where such addition will not and is not intended to have any effect on the potability, palatability or purity of such drinking water but has for its sole purpose the prevention of dental caries.
The plaintiff contends that the prevention or treatment of diseases of the teeth is a matter of private health and not of public health, and that the addition *561 of fluoride chemicals to the water supply constitutes an invasion of his constitutional liberties to treat his health as he deems best, his right as a parent to safeguard the health of his children as he deems best, his right to be free from medical experimentations and his right of freedom of religion.
The personal liberties granted by the Constitution, although broad and on the whole inviolate, are nevertheless subject to certain qualifications and restraints and are generally held to be subject to a valid exercise of the police power. The Supreme Court of the United States in discussing constitutional liberties has said:
“Liberty implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interest of the community.” Chicago, Burlington & Quincy Bd. Co. v. McGuire, 219 U. S., 549, 55 L. Ed., 328, 31 S. Ct., 259.
The Supreme Court of the United States in Jacobson v. Massachusetts, 197 U. S., 11, 26, 49 L. Ed., 643, 25 S. Ct., 358, in holding a compulsory vaccination statute constitutional, said in regard to constitutional liberties:
“The defendant insists that his liberty is invaded when the state subjects him to fine or imprisonment for neglecting or refusing to submit to vaccination; that a compulsory vaccination law is unreasonable, arbitrary and oppressive, and, therefore, hostile to the inherent right of every freeman to care for his own body and health in such way as to him seems best; and that the execution of such a law against one who objects to vaccination, no matter for what reason, is nothing short of an assault upon his person. But the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from re *562 straint. There are manifold restraints to which every person is necessarily subject for the common good. On any other basis organized society could not exist with safety to its members. Society based on the rule that each one is a law unto himself would soon be confronted with disorder and anarchy. Real liberty for all could not exist under the operation of a principle which recognizes the right of each individual person to use his own, whether in respect of his person or his property, regardless of the injury that may be done to others. This court has more than once recognized it as a fundamental principle that ‘persons and property are subjected to all kinds of restraints and burdens, in order to secure the general comfort, health, and prosperity of the state; of the perfect right of the Legislature to do which no question ever was, or upon acknowledged general principles ever can be made, so far as natural persons are concerned.’ ”
The plaintiff, while admitting that personal liberties are not wholly free from restraint, contends that, for a valid exercise of the police power on the basis of public health, the subject matter of the regulation must relate to contagious or infectious diseases, and that there must exist an overriding necessity.
In regard to this, it is sufficient to say there is no foundation in law for such a premise. An examination shows that laws relating to child labor, minimum wages for women and minors and maximum hours for women and minors have all been upheld on the basis of the police power in relation to public health. Regulations relating to control of venereal diseased blood tests for mar tion of mil]^ have all been held valid as based on police power exercised in regard to public health. riage licenses, sterilization; pasteurizar chlorination of water"and vaccination^
Clearly neither an overriding public necessity or emergency nor infectious or contagious diseases are *563 the criteria which authorize the exercise of the police power in relation to public health.
That dental caries is a disease is not questioned, and its prevalence is well recognized, as is the fact that the health of the teeth bears a direct relationship to general physical health. In sustaining a similar fluoridation statute, the court in Dowell v. City of Tulsa (Okla.), 273 P. (2d), 859, 863, stated:
“The relation of dental hygiene to the health of the body generally is now so well recognized as to warrant judicial notice.”
Thus the fact that dental caries is neither infectious nor contagious does not remove it from the authority of a municipality to attempt its control by fluoridation of the water supply.
In Kaul v. City of Chehalis (Wash.), 277 P. (2d), 352, 354, the Supreme Court of Washington, in a decision upholding fluoridation legislation, said:
“Dental caries is neither infectious nor contagious. This, however, does not detract from the fact that it is a common disease of mankind. As such, its prevention and extermination come within the police power of the state.”
In considering the same subject, the Supreme Court of Louisiana, in Chapman v. City of Shreveport, 225 La., 859, 74 So. (2d), 142, said:
“The appellees insist, and the district judge concluded, that fluoridation of the water to prevent tooth decay is not a matter of public health, but a matter of private health and hygiene. The evidence in this record refutes overwhelmingly this conclusion. Dental caries is one of the most serious health problems in the city of Shreveport, and in the nation as well. The fact that it is not a communicable disease and one that can cause an epidemic does not detract from its seriousness as affecting the health and well-being of the community. The plan for fluoridation, therefore, *564 bears a reasonable relation to the general welfare and the general health of the community, and is a valid exercise of the power conferred by section 2.01 of the charter if it is not arbitrary or unreasonable.”
It is argued that the same result might be accomplished by private dental care, and, since there is an alternative to public regulation, the police power may not be invoked. Although it is admitted that private care would be as effective, the record shows that there are not sufficient private dental facilities to perform the task. Under our modern existence the law must change and expand with mechanical and scientific progress. What did not concern public health yesterday, because of an inability of science to cope with the problem at hand, may very well today become a matter of public health due to scientific achievement and progress. The use of fluoridation to prevent dental caries is an excellent example of this proposition. Science has discovered a method whereby dental caries may be diminished. The prevalence and danger of such caries are well known and the only practicable application of such scientific knowledge is by treating drinking water with fluoride. Thus the problem of dental caries has of necessity become one of public health.
Nor does the fact that the fluoride, instead of killing germs, builds up a resistance to the disease have any effect on the validity of fluoridation legislation. The court in Dowell v. City of Tulsa, supra, 863, disposed of this question, in the following language :
“Plaintiffs concede, as they must, that municipalities may chlorinate their water supply, Commonwealth v. Town of Hudson, 315 Mass., 335, 52 N. E. (2d), 566; McQuillin Municipal Corporations (3d Ed.), Vol. 7, Sec. 24.265 and though they contend, under one proposition, that a city’s treatment of its water supply with *565 fluorides is the unlicensed practice of medicine, dentistry and pharmacy under our statutes, they here argue that such treatment must be distinguished from treatment with chlorides, because the latter will kill germs, purify water and accordingly aid in the prevention and spread of disease, whereas fluorides will not. We think that if the'putting of chlorides in public water supplies will in fact promote the public health, the distinction sought to be drawn by plaintiffs is immaterial. To us it seems ridiculous and of no consequence in considering the public health phase of the case that the substance to be added to the water may be classed as a mineral rather than a drug, antiseptic or germ killer; just as it is of little, if any, consequence whether fluoridation accomplishes its beneficial result to the public health by killing germs in the water, or by hardening the teeth or building up immunity in them to the bacteria that causes caries or tooth decay. If the latter, there can be no distinction on principle between it and compulsory vaccination or inoculation, which, for many years, has been well established as a valid exercise of police power. ’ ’
Although it is true that the actual active effect of fluoridation is confined to that period of a person’s life while the teeth are developing, such benefits extend on into adult life and fluoridation legislation is not such class legislation as to invalidate it.
In Chapman v. City of Shreveport, supra, 145, the court answers that argument, as follows:
“Although the immediate purpose of the proposed fluoridation is to retard and decrease the disease of dental caries in young children, the protection thus given will continue well into adult life. Not only will the proposed fluoridation retard and reduce this disease in the generation of children presently in Shreveport, but its effect will continue into their adult life, *566 and consequently the proposed measure will ultimately be beneficial to all the residents of the city.
“The health of the children of a community is of vital interest and of great importance to all the inhabitants of the community. Their health and physical well-being is of great concern to all the people, and any legislation to retard or reduce disease in their midst cannot and should not be opposed on the ground that it has no reasonable relation to the general health and welfare. Children of today are adult citizens of tomorrow, upon whose shoulders will fall the responsibilities and duties of maintaining our government and society. Any legislation, therefore, which will better equip them, by retarding or reducing the prevalence of disease, is of great importance and beneficial to all citizens. In our opinion the legislation does bear a reasonable relation to public health.”
It is clear from the record that the fluoridation of water for the prevention of dental caries has progressed far beyond the experimental period and has now become an established method. The facts that there are still differences of opinion as to its value and effect by a number of persons and that there are certain questions unanswered in relation to fluoridation do not make it an experiment. There are dissenters to many established and proved scientific practices which are accepted today. Dissent to scientific method does not constitute such method an experiment, and plaintiff’s contention that fluoridation constitutes experimentation is without foundation.
Plaintiff’s argument that fluoridation constitutes mass medication, the unlawful practice of medicine and adulteration may be answered as a whole. Clearly, the addition of fluorides to the water supply does not violate such principles any more than the chlorination of water,' which has been held valid many times.
*567 It was said in Dowell v. City of Tulsa, supra, 864:
“Plaintiffs do not elaborate on tbeir contention that ordinance 6565 is in violation of the ‘free exercise’ of religion, which, in the First Amendment of the United States Constitution, Congress is forbidden to prohibit, but we assume this is based on the hypothesis that the fluoridation prescribed in the ordinance is a form of ‘medication’ or ‘medical treatment’ forbidden by the tenets of one or more well known churches or religious sects. This argument is closely allied to one phase of the plaintiffs’ ‘proposition 4’ to the effect that fluoridation is treatment of a disease and therefore that the ordinance constitutes the unlicensed practice of medicine as defined and forbidden in Title 59 0. S. 1951, Sections 495b and 497. To what was said concerning a similar argument in De Aryan v. Butler, supra, which we hereby approve and adopt, we wish to add our opinion that in the contemplated water fluoridation, the city of Tulsa is no more practicing medicine or dentistry or manufacturing, preparing, compounding or selling a drug, than a mother would be who furnishes her children a well balanced diet, including foods containing vitamin D and calcium to harden bones and prevent rickets, or lean meat and milk to prevent pellagra. No one would contend that this is practicing medicine or administering drugs.”
To summarize:
I. Although dental caries does not constitute a contagious or infectious disease, it is a disease so common and so widespread that it is a proper subject, in relation to public health, for a municipal corporation to act upon in the exercise of the police power.
II. The introduction of inorganic fluoride chemicals in its municipal drinking water does not constitute an infringement of the constitutional liberties of the citizens of such municipality or an exercise of power in *568 contravention of the general laws in relation to adulteration or practice of medicine.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Hart, Zimmerman, Stewart, Bell and Taft, JJ., concur.