143 So.2d 879 (1962)
The CITY COMMISSION OF THE CITY OF FORT PIERCE, Florida, a Florida Corporation, Appellant,
v.
The STATE of Florida ex rel. John ALTENHOFF, Appellee.
No. 2579.
District Court of Appeal of Florida. Second District.
July 25, 1962.
Rehearing Denied August 27, 1962.
*880 Errol S. Willes, Ft. Pierce, for appellant.
E.O. Denison and C.R. McDonald, Jr., Ft. Pierce, for appellee.
Bjarne B. Andersen, Jr., and Carlton Maddox, Jacksonville, for amicus curiae, Florida State Board of Health.
Robert T. Mann and C. Lawrence Stagg, Whitaker, Mann & Stagg, Tampa, for amicus curiae, Florida State Dental Society, Inc.
ALLEN, Acting Chief Judge.
Injunctive relief was sought below by the relator, John Altenhoff, appellee in this court, to restrain the City Commission of the City of Fort Pierce, Florida, respondent below, appellant here, from implementing a municipal ordinance directing the City Manager of the City of Fort Pierce to provide for the introduction of fluoride into the water supply of said city as directed by the State Board of Health. The complaint alleged that, under the ordinance, respondent "determined to cause the public water supply produced by the said City and furnished to the relator and the citizens of said City and others, to be impregnated with sodium fluoride in the ratio of one part sodium fluoride to one million parts of water, or more, the same being the type of fluoride and the ratio of impregnation directed by the said State Board of Health and referred to in said ordinance."
The complaint further alleged that the above described fluoridation of the water supply constitutes a nuisance under § 823.01, F.S.A.; that it is injurious to the health of those citizens supplied by the water system, particularly the relator and his family; that the ingestion of fluoride from the water supply is cumulative and productive of fluoride poisoning and intoxication which are fatal to persons afflicted with diabetes, nephritis or glandular diseases; and that sodium fluoride is an insidious poison generally injurious to the health of the citizenry. It was also alleged that fluoridation of the water system would *881 cause irreparable injury to those members of the public dependent upon it for water, for which there would be no adequate remedy at law.
It was further alleged that fluoridation of the water system, amounting to mass medication, violates the rights of the citizens guaranteed by §§ 1 and 5 of the Declaration of Rights, F.S.A.; that the ordinance (#E44) providing for fluoridation is void as an unlawful delegation of the authority delegated to the City by the Legislature in that it vests in the City Manager and/or the State Board of Health an arbitrary discretion; that the ordinance exceeds the powers granted to the City in its charter, Chap. 57-1331, Laws of Florida, 1957 (Spec.Acts), in that fluoridation is not purification but pollution of the water supply; that there has been no lawful appropriation of funds to purchase the equipment provided for in the ordinance; and that the ordinance "is violative of the constitutional guarantee against Class Legislation in that its proponents only claim it is beneficial to children of the age group of one to fourteen years; yet the mass medication must be consumed by the remaining 86% of the population regardless of the detriment to this large percent of the population of said City."
The complaint then prayed for both a temporary and permanent injunction restraining the respondent from fluoridating the water supply and purchasing any equipment designed to accomplish that end.
Respondent's motion to dismiss was denied, whereupon an answer was filed denying the material allegations of the complaint and averring that "the preservation of health and safety of the people in a community is of prime importance in the exercise of the police power of said City, and that said ordinance E-44 is designed to promote the health and welfare of the citizens * * * dependent upon the water supply furnished to them by the said City."
Paragraph 8 of the answer was stricken on relator's motion, but with leave to amend, and as amended reads in part as follows:
"1.  Further answering said Complaint this Respondent avers that public hearings were had before the Commission of the City of Fort Pierce, Florida on March 30, 1959 and April 2, 1959 and at said hearings the opponents and proponents to the fluoridation of the public water supply of the City of Fort Pierce presented evidence and arguments in support of their position; excerpts from the minutes of the said meetings of the City Commission of the City of Fort Pierce are hereto attached and by reference made a part hereof; that subsequent to said hearings, that is, on December 7, 1959, Ordinance E-44 was duly adopted by the City Commission of the City of Fort Pierce.
"2.  That the St. Lucie County Health Department being an agency of the State Board of Health, is employed by the Respondent as its health inspectors and officers; that the St. Lucie County Health Department is under the direction and supervision of Dr. Neill Miller, a deputy State Board of Health Officer; that the Florida State Board of Health has broad concern for all conditions which affect the health of the citizens of the State of Florida and has formulated general policies affecting the public health of the State of Florida; that under the general direction of the State Board of Health the State Health Officer is required to enforce rules and regulations relating to the general health of the people of the State of Florida and to cooperate with other appropriate state, county, municipal and private boards, departments or organizations for the improvement and preservation of the public health in supervising services which affect the health of the community as a whole. That the Florida State Board of Health, after a public *882 hearing held on August 20, 1955 to allow both the opponents and proponents to present any new  or to reevaluate any old  scientific evidence which might have a bearing on the desirability, effectiveness or safety of the fluoridation of the public water supplies, determined, authorized and recommended that the fluoridation of the public water supply was an urgent need for the improvement of dental health and for the control of dental caries; that this Respondent has complied with all of the policies and regulations of the State Board of Health for the fluoridation of its public water supply; that the fluoride content to be applied to its public water supply will not exceed 1.1 parts per million gallons of water which said fluoride will be impregnated into the public water supply under the supervision and direction of the State Board of Health through employees and servants of the Respondent."
Thereafter, the parties jointly filed a stipulated statement of the facts which the lower court approved in its pretrial order and which he ruled would control the subsequent course of the cause unless modified during trial to prevent manifest injustice. Said fact statement reads:
"It is stipulated and agreed by and between counsel for the respective parties to the following statement of facts to be submitted to the Court for its consideration in the determination of the above entitled cause, to-wit:
"1. That the form of fluoride intended to be used by the City in its fluoridation of the water supply is Sodium Fluoride or some other type of fluoride chemical preparation approved by the State Board of Health, hereinafter referred to as fluoride.
"2. That Fluoride is not a purifying agent when put in a water supply or thereafter.
"3. That the sole purpose of fluoridation of the City's water supply is to reduce the number of caries, or cavities, in the teeth of individuals from birth to age seventeen, with a residual benefit to those persons throughout life, by drinking the fluoridated water.
"4. The percentage of distribution of fluoride in the City's water supply in different parts of the City can be checked, either in the lines or at point of consumer use or the entire system at any time so required.
"5. That the Florida State Board of Health is in no sense under the control of or subject to the orders of the City Commission of the City of Fort Pierce but that the City of Fort Pierce is subject in some respects to orders by the State Board of Health in the operation of its water supply system.
"6. That the incumbent City of Fort Pierce City Manager is not a physician, chemist or pharmacist.
"7. That there has been a determination of the percentage of fluoride in the present water supply and the information is available at the Bureau of Dental Health and the Bureau of Sanitary Engineering, Florida State Board of Health, Jacksonville, Florida.
"8. That the amount of water used for drinking purposes from the City's water supply is very low and not more than two percent.
"9. That the cost of equipment necessary for fluoridation of the City's water supply will be approximately $9,000.00 and that the annual cost of the Fluoride to be placed in the water supply will be in excess of $3,000.00; that the City's water supply is between two and four million gallons per day."
Each party filed a motion for summary decree. In opposition to the motion filed *883 by respondent, the attorney for relator filed the following affidavit:
"Comes now E.O. DENISON, as Attorney for the Relator herein, JOHN ALTENHOFF, and makes this affidavit for and on behalf of said Relator and Plaintiff, and after being duly sworn, by me, the undersigned authority, deposes and says:
"1. That the allegations of Paragraph 7 of the Respondents' Motion for Summary Decree is denied.
"2. That the fluoridation of the water supply of the City of Fort Pierce is not for the general welfare and health of the community, but on the contrary, is for the purpose of retarding the prevalence of dental caries in the teeth of minors up to and including the age of fourteen years who imbibe the City's water supply if and after the same has been flurinated (sic), and that the percentage of the population of said City designed to be benefitted is but a small portion thereof, i.e. less than 20%, and is not for the benefit of the general welfare and/or health of the people of the City of Fort Pierce.
"3. That the fluoridation of the City's water supply is an illegal and ultravires exercise of the powers delegated to the City of Fort Pierce by the Legislature of the State of Florida under its police powers, or otherwise.
"4. Deponent further denies that the purported official policies of the State Board of Health attached to and by reference made a part of Respondents' Motion, are not the current policies of said State Board of Health with reference to the fluoridation of public water supplies, but on the contrary, are antiquated and obsolete and not in conformity with the current medical dental and surgical opinion concerning the harm and benefit derived and/or suffered by the public as a result of the fluoridation of a public water supply in the proportion specified in said `policy' i.e., one part per million Sodium Fluoride to water, and that material issues in this cause are raised and must be determined on the points herein stated."
The lower court granted relator's motion and entered a summary final decree granting the injunctive relief sought. Significant portions of the chancellor's opinion incorporated therein are set forth as follows:
"* * * Each side has filed a Motion for Summary Decree and each claims the right to a Summary Decree as a matter of law only, based solely on the Complaint, Answer as amended, and Stipulation, so that a granting of one motion necessarily denies the other  without consideration of whether the other is well founded from procedural points of view." (Emphasis ours.)
"The Court has heard lengthy argument by able counsel for each side, and also by counsel for the State Board of Health who appeared, with consent of the Court, as amicus curiae. Voluminous authority and a multitude of citations have been submitted.
"Because of the grave importance of this litigation to the inhabitants of the City and also to those charged with the administrative affairs of the Municipal Corporation, the Court feels it is within the bounds of propriety to set forth some observations.
"This case is one of original impression in the State of Florida. Only a few of the sister States have passed on the question of fluoridation and they have only begun to scratch the surface in answering all the questions posed by the subject, and none is of any great benefit in answering the immediate problem before this Court. The immediate problem before this Court is only indirectly connected with the pros *884 and cons of fluoridating public supplies of water and counsel have kindly furnished for the edification of the Court a mountain of authentic printed material, pro and con, on the subject of fluoridation. A perusal thereof shows it to be very conflicting and leads to two conclusions; first, that any trial on the merits of fluoridation brings forth greatly conflicting evidence and, second, that medical science must be relied upon to find the ultimate solution.
"As to the advisability of fluoridating water, it is of no consequence or importance whether the Court personally approves or disapproves of fluoridation. The only question to be determined here is of a purely legal and constitutional origin and the question will so be dealt with, and only from that standpoint. The Supreme Court of the State of Washington, ([Kaul v. City of Chehalis, 45 Wash.2d 616,] 277 P.2d 352) in discussing the decision of the trial court in the Shreveport, Louisiana fluoridation case ([Chapman et al. v. City of Shreveport, 225 La. 859] 74 So.2d 142) made this rather unusual statement:
"`The trial Judge subtly adopts the arguments of the scientific opponents of fluoridation. Although the relevancy of that question is denied on one hand, it is nurtured on the other.'
"Any `nurturing' on the part of this Court in behalf of either proponents or opponents of fluoridation is purely accidental and committed unconsciously.
"The proposition presented by Relator's Motion for Summary Judgment is:
`Has the State of Florida, by existing law, granted power to the City of Fort Pierce to fluoridate its public water supply?'
"The question is both serious and troublesome.
"The Court is not here confronted with the question of whether the State can authorize the fluoridation of the public water supply, but whether the State has, expressly or by implication, granted this power to the City of Fort Pierce. This Court is not called upon, nor can it, in answering this question, pass on the desirability and justification of fluoridating the public water supply.
"The legislature of the State of Florida has enacted no statute expressly authorizing fluoridation. Therefore, the power of the City to fluoridate must be implied.

"The Constitution of Florida by Article VIII, Section 8, provides:
"`The legislature shall have power to establish and to abolish, municipalities to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time * * *.' (Emphasis supplied).
"It is a recognized and established principle of law that municipalities are purely creatures of the legislative branch of the Government. The following from 23 Florida Jurisprudence under the general heading Municipal Corporations is indicative of this principle:
"Page 23. `In exercising certain public functions at the local level, a municipality is to that extent exercising State functions for the benefit of the public in the local community. A municipality derives all of its powers, duties and its very existence from the State, acting through its legislative body.'
"Page 146. `The immediate source of a municipal corporation's police power is the special act of the legislature *885 establishing its charter, the general laws specifying the powers and authority of municipalities, and the implied grant of power in its charter and the general laws.
"`The principle that grants of power are to be strictly construed is applicable to grants of police power. Consequently it is a well settled principle that any fair, reasonable doubt concerning the existence of police power will be resolved by Courts against the municipal corporation and the power will be denied.
"`The police power of municipalities exists solely by virtue of such (statutory and constitutional) grant.
"Page 112. `So far as their (ordinances) constitutional validity is concerned, they are considered in the same light as laws of the State and must conform to the Supreme organic law in every respect.'
"The Town of Fort Pierce was originally incorporated under the general law on February 2, 1901. This incorporation was validated by the legislature by Chapter 5100, Acts of 1901, and in later years the City has been reincorporated, or received a new Charter, at various times and the present charter, Chapter 57-1331 Acts of 1957, was adopted at a referendum election held December 3, 1957. Amendments enacted by the 1959 session are of no concern here.
"`The Constitution empowers the legislature to create a municipality by special act. The municipality is powerless to act unless such a special act gives it authority to do so. The paramount law of a municipality so created is the municipal charter. It is the municipality's constitution enumerating and giving it all the powers it possesses, unless other statutes are applicable to it.' 23 Fla.Jur. 41.
"Section 142 of the Charter provides that the City is authorized to procure and distribute;
"`* * * An abundant supply of good wholesome water * * *.'
"Also in section 14 (34-a) under the heading `Police Powers' the City if granted the power and authority `as provided by law' (emphasis added):
"`To exercise all of the powers of local self-government and to do whatever may be deemed necessary or proper for the safety, health, convenience or general welfare of the inhabitants of the City; to exercise full police powers to do and perform all acts and things permitted by the laws of the State of Florida, and comprehended as duties in the performance of anything recognized as a `municipal purpose', whether now existing and recognized, or hereby recognized as a municipal purpose by statute, law or court decision.'
"Therein, within the bounds of the last three above quoted statements and within the further bounds of any and all reasonable, rational, honest and legal implications which may be drawn therefrom, must be found the answer.
"`The legislative intent is the polar star by which the Courts must be guided since it is the essence and vital force behind the law and the rules of statutory construction are the means whereby the Courts seek to determine this intent when it is not clear. 30 Fla.Jur. 173.
"`It is not a question of supplying or deleting words or distorting and analyzing phrases to see what the legislature had in mind. The problem is to arrive at the legislative intent from the content of the Act as is. Overman v. State Board of Control, et al., Fla., 62 So.2d 696.'
"Persuasive authority from other jurisdictions has been examined without *886 conclusive result. As stated above, few of the sister States have passed on the question of fluoridation, and in most cases it has been upheld for a variety of reasons. However, in none of the cases, or combinations thereof, can an answer be found to the question before this Court, since a careful examination of each will reveal a different factual and legal situation when analyzed and compared with the problem presented here.
* * * * *
"No authority has been cited and the Court has found none which gives the State Board of Health independent authority to fluoridate the water supply of the City; and it should be remarked in passing that the State Board of Health claims none.
"The Court takes judicial notice that a public water supply is not fluoridated in order to filter the water, or purify it, or to make it more abundant, potable or wholesome.
"The Court conceives fluoridation of the public water supply to be for the direct benefit of a limited percentage of the population; and in this respect fluoridation is unlike emergency health measures such as compulsory vaccination or compulsory detention and enforced treatment for veneral disease, both of which are not only for the benefit of the individual but the general populace as well. An individual with dental caries is not directly, or indirectly, a menace or hazard to the community or to other individuals. Dental caries is neither infectious or contagious and when the water is fluoridated the individual alone receives the direct benefit.
"It is true that any direct benefit to one is indirectly a benefit to all; but how far the indirect benefit reaches, or to what extent it is limited, is not to be decided here.
"Any scheme, plan or legislation to preserve and protect health, whether on a mass basis or not, is both laudable and desirable  and in modern society needed, if for no other reason than to reduce the cost of medical service  provided there is no violation of organic law.
"But to the Court it is no more reasonable to imply, from the passages quoted above, a grant of power to the City to fluoridate its water supply than it would be to imply, from these same passages, a grant of power to the City to require all children between the ages of six to sixteen to report periodically to a public health agency for individual fluoride treatment. Admittedly, the one situation is both ridiculous and unreasonable; but unreasonable also is the other, when examined under the light of organic law.
"Speculation, guesswork and conjecture have no part in statutory interpretation, and fair, reasonable doubts concerning the existence of police power must always be resolved against a municipality.
"The City Commissioners of the City of Fort Pierce, Florida, and their successors in office, are hereby permanently enjoined from taking any further action or doing any other thing wherein or whereby said Ordinance E-44, or amendments thereto or reenactments thereof, may or might be effectuated; unless and until duly enacted power and authority so to do is granted by the Legislature of the State of Florida."
In ruling on and granting the relator's motion for summary decree, the lower court determined that the question before it was "Has the State of Florida, by existing law, granted power to the City of Fort Pierce to fluoridate its water supply?" This then is the only question before this court in this appeal, although the *887 parties have attempted to raise other issues. At the outset, it should be noted that the legislature has not in so many words, either by charter provision or otherwise, specifically authorized the City to fluoridate its water supply. Therefore, if the City does so have the power to fluoridate, it has it by virtue of other, more broad provisions of authority expressly conferred upon it.
The present charter of the City of Fort Pierce appears as Chap. 57-1331, Laws of Florida, 1957 (Spec. Acts). Article II of the charter relates to the powers conferred upon the City by the legislature. See also Article X, Utilities, paragraphs 142 and 149. Paragraph 32, § 14 of Article II authorizes the City to maintain an adequate water supply and to keep it free from pollution. It deals primarily, however, with the establishment of the water system's physical plant and the problem of water purification. The language in said paragraph 32 does not persuade either pro or con on the question of the City's power to fluoridate. Such power to fluoridate, if it is to be inferred from any of the provisions in the charter as a logical implementation of broader powers expressly granted, must be inferred from paragraph 34, "Police powers," and paragraph 36, "Enumerated powers not exclusive," appearing in Article II.
Paragraph 34 reads in part as follows:
"(a) To exercise all of the powers of local self-government and to do whatever may be deemed necessary or proper for the safety, health, convenience or general welfare of the inhabitants of the city; to exercise full police powers to do and perform all acts and things permitted by the laws of the State of Florida, and comprehended as duties in the performance of anything recognized as a `municipal purpose', whether now existing and recognized, or hereby recognized as a municipal purpose by statute, law or court decision."
Paragraph 36 reads:
"36. Enumerated powers not exclusive. The special and general powers granted by this charter shall be construed as objects, purposes and powers of the city and shall be construed to be in furtherance and not in limitation of general powers conferred by the laws of the state upon cities and towns; and it is specifically provided that no limitation, expression or declaration of specific powers and purposes enumerated in this charter shall be deemed to limit or restrict or to be exclusive. Whenever this charter shall grant or confer upon the city the rights, powers and privileges now belonging to or conferred upon cities and towns by the general laws of the state, such rights, powers, and privileges enjoyed by cities and towns under the general laws of this state and hereby granted and conferred upon the city, shall extend but not restrict or infringe upon or limit the rights, privileges and powers conferred by this Charter. The city, in receiving and exercising the rights, privileges and powers conferred upon cities and towns under authority of either special or general laws of the state, shall not thus be subjecting itself to any other duties, limitations or obligations naturally a part of such rights, privileges and powers, except those herein specifically provided; and finally in addition to any enumerated particular powers or adoption of powers of other cities and towns in the state granted either by general or special laws of the state, the city shall have and exercise all other powers which under the state constitution it would be competent for the legislature to enumerate specifically." (Emphasis added.)
Clearly, under the above two charter provisions, the City has been given a broad power to legislate by municipal ordinance for the general welfare and health *888 of the populace. The closest to an express provision authorizing fluoridation, of course, is subsection 34 permitting "municipal legislation" under the police power for the health and general welfare of the inhabitants. No one could seriously question that the subject of fluoridating a water supply is concerned with health. The contention has been made in this court that the power to legislate for the health of the people extends only to preserving health but excludes such public measures as may be designed to improve health. This contention is further refined by comparing the process of chlorination with that of fluoridation. With the former, which is commonly employed, water is treated so that its consumers do not contract any diseases from the water itself. In short, it purifies. The process of fluoridation, however, is in no way connected with purification but rather has as its object curative and preventive medicine, or more accurately dentistry. To be specific, the drinking of fluoridated water is purported to reduce the incidence of tooth decay and cavities, predominantly in children. In the words of some of its opponents, fluoridation is "mass medication." That there is, in logic, a valid factual distinction between preserving health on the one hand and improving it on the other, we do not question. We do feel, however, that it is a distinction which the courts should not be made to suffer in arriving at a determination as to whether a particular public health measure is or is not a reasonable or legitimate exercise of the power to legislate in the public interest on the state or local level. Nor should the legislature in granting City Charters be bound to anticipate and therefore required to specify what particular measures are or may become necessary and proper in the interests of the health and general welfare of the inhabitants of cities chartered by it. If all municipal policy must be determined in advance by the legislature, then the terms "local government," "local control" and "self determination" are empty slogans.
From the emphasized portion of Paragraph 36, Article II of the city charter (Enumerated powers not exclusive), quoted above, the conclusion is drawn that the City has those powers, in addition to those that are spelled out in the charter, which, under the constitution the legislature could enumerate specifically. The problem thus must eventually evolve to whether or not fluoridation is a proper and legitimate subject of legislation. The answer to such a question necessarily requires a conclusion of law based on the facts in each individual case. In any case where legislation invoking the police power is enacted, the deprivations and infringement of rights and preferences resulting to the individual must stand the test of substantive due process. Such legislation cannot be arbitrary or oppressive and the laudable objectives in the public interest should be such as to justify the transgression on individual rights and interests. Further, the means contrived to achieve these objectives must reasonably appear to accomplish them. Assuming legislation to be in the public interest, when it runs counter to the interest of the individual, that of the individual must give way absent a determination that the individual is being arbitrarily or unreasonably imposed upon. See generally, Hill v. State, 1944, 155 Fla. 245, 19 So.2d 857, reversed 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782, rehearing denied 326 U.S. 804, 66 S.Ct. 11, 90 L.Ed. 489, Egan v. City of Miami, 1938, 130 Fla. 465, 178 So. 132.
Although some inferences to the contrary can be drawn from the opinion written by the chancellor, he did not expressly pass on the question of whether the fluoridation of the City's water system was a proper exercise of the police power. Therefore, the question of the reasonableness vel non of the ordinance in question is not before us and we must assume that it meets the substantive due process test. The only question decided below was whether or not the City of Fort Pierce has legislative authority to fluoridate its water system. *889 We hold that it does under the broad powers expressly conferred upon it in Article II, paragraphs 34 and 36 of its charter.
The recent case of Wilson v. City of Council Bluffs, Iowa 1961, 110 N.W.2d 569, is illustrative of how the question of fluoridation has been treated in other jurisdictions. In that case, a group of taxpayers brought a class action to enjoin the enforcement of an ordinance providing for fluoridation of a municipal water supply. Under the pleadings and a stipulation of fact, the trial court determined that but two legal questions were before it. The first of these questions was the statutory authority of the City to enact the ordinance in question. The trial court held that the City had no authority, express or implied, to enact the ordinance providing for fluoridation. On appeal, the finding of no authority was reversed.
The facts and propositions of law in the Iowa case are substantially similar to those with which we are dealing in the instant case. The instant case being one of first impression in Florida, we therefore adopt the following observations and conclusions of the Iowa Supreme Court, insofar as they are applicable, in support of our conclusions hereinbefore reached.
That Court, beginning at 110 N.W.2d 571, stated:
"IV. There can be no question under this record and the stipulation but that the city acted, in good faith and after due deliberation, under its, at least supposed, power in Sections 366.1 and 368.2, above set forth. More specifically, the ordinance itself shows it as deemed to be a health measure enacted under that part of Section 366.1 which is as follows: `* * * and such as shall seem necessary and proper to provide for the safety, preserve the health * * * of * * * the inhabitants thereof * * *.' (Italics ours.) It is a `police power' enactment.
"`Police power' is a general term containing many ramifications and has never been pin-pointed as to its exact meaning. City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 184 N.W. 823, 188 N.W. 921, 23 A.L.R. 1322. No one contends that the matter of the public health is not a proper subject of the police power or that such power has not been specifically delegated to cities and towns coextensive with their corporate limits. Cecil v. Toenjes, 210 Iowa 407, 228 N.W. 874. The trial court recognizes such facts but holds the addition of fluorides to the public water supply is not an authorized attribute thereof. It bases this holding primarily upon the stipulation that the only purpose of adding fluorides is on the theory that it will prevent dental caries in children; and that dental caries is neither a contagious nor an infectious disease.
"The trial court concedes the right of a city to enact health regulations such as are intended to overcome contagious or infectious diseases on the theory that it is for the benefit of the community as a whole rather than those who are actually affected therewith. Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643. There is nothing in the cited case prohibitive of `aiding a segment of the whole' rather than `aiding the whole', if the aiding is in fact a health measure, nor have we been cited any such a holding. See City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 184 N.W. 823, 188 N.W. 921, 23 A.L.R. 1322. It is clear that the city considered it to be a health measure. Under the stipulation no claim is made that the city acted hastily or arbitrarily in enacting the ordinance, nor is there any issue as to whether it is or is not beneficial or detrimental as a health adjunct. The merits of fluoridation are not in issue, only the authority or the lack of authority in the *890 city to enact such an ordinance. We hold it has such authority, not in specific words but necessarily implied under Sections 366.1 and 368.2, Code 1958, I.C.A. See Annotation 43 A.L.R.2d 453, 459 and authorities therein cited. While appellees argue an invasion of personal liberties guaranteed by the State and Federal Constitutions, no such issue is raised by the pleadings; was not before the trial court and will not be considered here. In re Estate of Lundgren, 250 Iowa 1233, 98 N.W.2d 839."
In Kraus v. City of Cleveland, 1955, 163 Ohio St. 510, 127 N.E.2d 609, the Supreme Court of Ohio held that the introduction of fluoride into a municipal water supply did not infringe constitutional liberties and that the prevention and control of dental caries, a common disease of mankind, is a proper subject, in relation to public health, for legislation enacted pursuant to the police power vested in municipalities by general law and the state constitution.
The Court, in its opinion, stated at 127 N.E.2d 611-613:
"Clearly neither an overriding public necessity or emergency nor infectious or contagious diseases are the criteria which authorize the exercise of the police power in relation to public health.
"That dental caries is a disease is not questioned, and its prevalence is well recognized, as is the fact that the health of the teeth bears a direct relationship to general physical health. In sustaining a similar fluoridation statute, the court in Dowell v. City of Tulsa, Okl., 273 P.2d 859, 863, stated:
"`The relation of dental hygiene to the health of the body generally is now so well recognized as to warrant judicial notice.'
"Thus the fact that dental caries is neither infectious nor contagious does not remove it from the authority of a municipality to attempt its control by fluoridation of the water supply.
* * * * *
"It is argued that the same result might be accomplished by private dental care, and, since there is an alternative to public regulation, the police power may not be invoked. Although it is admitted that private care would be as effective, the record shows that there are not sufficient private dental facilities to perform the task. Under our modern existence the law must change and expand with mechanical and scientific progress. What did not concern public health yesterday, because of an inability of science to cope with the problem at hand, may very well today become a matter of public health due to scientific achievement and progress. The use of fluoridation to prevent dental caries is an excellent example of this proposition. Science has discovered a method whereby dental caries may be diminished. The prevalence and danger of such caries are well known and the only practicable application of such scientific knowledge is by treating drinking water with fluoride. Thus the problem of dental caries has of necessity become one of public health.
"Nor does the fact that the fluoride, instead of killing germs, builds up a resistance to the disease have any effect on the validity of fluoridation legislation. The court in Dowell v. City of Tulsa, supra, 273 P.2d 863, disposed of this question, in the following language:
"`Plaintiffs concede, as they must, that municipalities may chlorinate their water supply, Commonwealth v. Town of Hudson, 315 Mass. 335, 52 N.E.2d 566; McQuillin Municipal Corporations (3d Ed.), Vol. 7, Sec. 24.265 and though they contend, under one proposition, that a city's treatment of its *891 water supply with fluorides is the unlicensed practice of medicine, dentistry and pharmacy under our Statutes, they here argue that such treatment must be distinguished from treatment with chlorides, because the latter will kill germs, purify water and accordingly aid in the prevention and spread of disease, whereas fluorides will not. We think that if the putting of chlorides in public water supplies will in fact promote the public health, the distinction sought to be drawn by plaintiffs is immaterial. To us it seems ridiculous and of no consequence in considering the public health phase of the case that the substance to be added to the water may be classed as a mineral rather than a drug, antiseptic or germ killer; just as it is of little, if any, consequence whether fluoridation accomplishes its beneficial result to the public health by killing germs in the water, or by hardening the teeth or building up immunity in them to the bacteria that causes caries or tooth decay. If the latter, there can be no distinction on principle between it and compulsory vaccination or inoculation, which, for many years, has been well-established as a valid exercise of police power.'
"Although it is true that the actual active effect of fluoridation is confined to that period of a person's life while the teeth are developing, such benefits extend on into adult life and fluoridation legislation is not such class legislation as to invalidate it.
* * * * *
"It is clear from the record that the fluoridation of water for the prevention of dental caries has progressed far beyond the experimental period and has now become an established method. The facts that there are still differences of opinion as to its value and effect by a number of persons and that there are certain questions unanswered in relation to fluoridation do not make it an experiment. There are dissenters to many established and proved scientific practices which are accepted today. Dissent to scientific method does not constitute such method an experiment, and plaintiff's contention that fluoridation constitutes experimentation is without foundation."
In sum, the cases from other jurisdictions which have passed on the question of fluoridation have rather uniformly held that a city may lawfully fluoridate its water supply. See 3 Yokley, Municipal Corporations, § 500, p. 200 (1958); Id. Vol. 1, § 64, p. 134; Ryne, Municipal Law 499 (1957); Annot., 143 A.L.R.2d 453 (1955). For further enlightening case treatment, see also Readey v. St. Louis County Water Company, Mo. 1961, 352 S.W.2d 622; Dowell v. Tulsa, Okla. 1954, 273 P.2d 859, 43 A.L.R.2d 445; Kaul v. City of Chehalis, 1954, 45 Wash.2d 616, 277 P.2d 352; Chapman v. City of Shreveport, 1954, 225 La. 859, 74 So.2d 142.
We hold that the lower court erred in ruling, as a matter of law, that the City of Fort Pierce was without legislative authority to fluoridate its water system. In his final decree the chancellor, in commenting on the fact that each side had filed a motion for summary decree, stated in effect that the granting of relator's motion necessarily amounted to a denial of the motion filed by respondent but without consideration as to whether respondent's motion was well founded procedurally.
The summary final decree in favor of relator is hereby reversed with directions to the chancellor to consider and expressly rule upon respondent's motion for summary decree.
Reversed.
SMITH, J., and LOVE, WM. K., Associate Judge, concur.