74 So.2d 142

CHAPMAN et al.

v.

CITY OF SHREVEPORT.

No. 41717.

May 31, 1954.

Rehearing Denied July 2, 1954.

J. N. Marcantel, City Atty., James W. Hammett, Asst. City Atty., Wilkinson, Lewis & Wilkinson, Shreveport, Sp. Counsel for defendant-appellant.

Robert G. Chandler, Shreveport, for plaintiffs-appellees.

HAWTHORNE, Justice.

This is an appeal by the City of Shreveport from a judgment enjoining it from fluoridating the municipal water supply. The City of Shreveport owns and operates its own municipal waterworks plant and other facilities for the sale and distribution of water for consumption and other uses of the inhabitants of that city. On October 16, 1953, the Shreveport city council adopted a resolution authorizing the commissioner of public utilities to proceed with the advertising and calling for bids for the necessary equipment to fluoridate the city water supply in accordance with the best plans now available and to receive these bids on or before October 27. The initial amount which the city proposes to spend in order to fluoridate the water supply is shown by the record to be in excess of $10,000 and the annual operating expense approximately $21,000.

The plaintiffs, as residents, citizens, taxpayers, and purchasers of water from the city, instituted this suit seeking a preliminary writ of injunction to prevent the proposed fluoridation of the public water supply and the expenditure of these public funds for such purpose. After trial in the lower court a preliminary injunction issued enjoining, restraining, and prohibiting the City of Shreveport from proceeding further to fluoridate the water supply of that city. From that judgment the city was granted a devolutive appeal to this court.

As we appreciate and understand the trial judge's written opinion, he granted a preliminary injunction in the instant case because in his opinion the charter of the City of Shreveport delegated no authority, express or implied, to the city to fluoridate its water supply, and the city did not have this power or right under its police power in the domain of public health. In the course of his reasons for judgment he recognized the well settled principle of law that a municipal authority may take any action it may determine to be necessary and expedient under its police power in the domain of public health, provided the purpose and object of such action bears a reasonable relation to the public health and provided the means employed is not arbitrary, unreasonable, oppressive, or violative of the constitutional guarantees of the citizens. He concluded, however, that under the facts of the instant case the fluoridation of the city water supply bears no reasonable relation to the public health or that it is not a matter of public health but is strictly within the realm of private dental health and hygiene, in which each person should be free to choose his course for himself and those for whom he is responsible in the family relationship.

For the primary *purpose of reducing tooth decay in children 12 years of age and under,* the City of Shreveport proposes to add to the water furnished by it for the use and consumption of the citizens sodium fluoride in the proportion of one part per

million. In furtherance of this purpose the resolution authorizing the calling for bids for the necessary equipment for fluoridation was adopted by the city council at the request of the Council of Dental Health of the Louisiana State Dental Society, the Council of Dental Health of the Fourth District Dental Association, the Shreveport Medical Society, and the City Board of Health of Shreveport, all of which advocated and approved the fluoridation of the city's water supply.

The relationship between the fluoride content of water supplies and dental caries has been the subject for some years of extensive scientific study, research, and experiments, and as a result of this research the court in the instant case has the benefit of facts ascertained, studies made, and opinions formed by many leading and prominent American dentists, physicians, surgeons, scientists, health and dental associations and organizations, whose statements have been filed in evidence, on the advisability of the fluoridation of water for human consumption. In sum, these statements disclose the following pertinent facts:

Dental caries, or tooth decay, is a pandemic disease, affecting most of our population both adults and children. Fluorides in varying proportions from less than one to 14 parts per million exist naturally in the water supplies of many regions of this country, and it has been demonstrated by studies made in many sections throughout the United States that in communities where the water supply contains no fluoride tooth decay among children is approximately three times greater than it is among children living in communities where the water supply contains one part of fluoride per million parts of water or more. In these studies other factors of diet and other mineral components of water were considered, but it was found that only the fluoride content of the water consumed bore direct relationship to consistent protection from dental caries. This preventive effect of fluorides on tooth decay was found to be most efficient during the period when the dentine and enamel of the permanent dentition are being formed, which is the period from birth to about the twelfth year, but it was shown that the protection afforded against dental caries in this formative period continues well into adult life, even into the middle 30's and 40's. Studies were made of the effect on tooth decay when fluorides were artificially added to municipal water supplies, and it was found that the fluorides artificially added had the same preventive effect on caries as did the fluorides naturally existing in water.

By November 6, 1953, more than 840 communities, with a total population of 15,-578,300, were using water supplies which had been artificially fluoridated in concentrations from 0.7 to 1.5 parts per million. By 1951, after five or six years of the fluoridation of the water supplies in certain cities, studies and examinations were made

of the teeth of school children in these cities (and also, for comparison, of those of the children in cities where the water supply contained no fluorides), and the finding reported was that there has been a reduction of from 50 per cent to 65 per cent of decay in permanent teeth in children in the cities where fluorides had been added artificially to the water. As a result of these studies and experiments the United States Public Health Service, the National Institute of Health, the American Dental Association, and numerous other national organizations recommended the fluoridation of municipal water supplies as a desirable and effective health measure.

The City of Shreveport proposes to use the recommended concentration of one part per million, and this concentration has not been reported to produce any adverse physiological effect. Vital statistics and reports of physicians from communities where water containing one part per million or over is consumed have shown uniformly no undesirable effects on birth or death rates or on invalids, elderly or sick individuals, or any other persons.

The addition of fluorides to the water supply does not affect the color, odor, or taste of the water. The same kind of procedure which has long been used to feed chlorine and other chemicals into the water supply is used to introduce fluorides into the water, and there is no question that fluorides can thus be added to the water without danger of physical over-feeding or any mechanical breakdown which would produce a toxic effect.

The charter of the city of Shreveport, which was written under the authority of a 1948 amendment to Article 14, § 37, of the Constitution and approved by a vote of the citizens of that community in 1950, confers upon that city the power to adopt such measures as are necessary in the opinion of the council to promote the general welfare of the inhabitants of that city in Section 2.01 of the charter:

"General Powers. The City of Shreveport shall have and may exercise all the powers, rights, and privileges and immunities which are now or may hereafter be or could be conferred upon cities of its population class by the constitution and general laws of the state; all powers, rights, privileges and immunities heretofore conferred on said city by any special act and not inconsistent with this plan of government; and all other powers pertinent to the government of the city the exercise of which is not expressly prohibited by the constitution of the state and which, in the opinion of the council, are necessary or desirable to *promote the general welfare of the city* and the safety, *health,* peace, good order, comfort, convenience and morals of its inhabitants, as fully and completely as though such powers were specifically enumerated in this plan of government, and no enumeration of particular powers in this plan or government shall be taken to be exclusive but shall be held to be in addition to

this general grant of power." (Italics ours.)

 Accordingly, if fluoridation of the water supply bears any reasonable relation to the public health, it can be undertaken by the city under the express provisions of this section of its charter. Moreover, it is well settled that courts will not interfere with the legislative authority in the exercise of its police power unless it is plain and palpable that such action has no real or substantive relation to the public health or safety or general welfare. City of Shreveport v. Conrad, 212 La. 737, 33 So.2d 503; City of Shreveport v. Bayse, 166 La. 689, 117 So. 775. There also exists a presumption that an ordinance adopted under the police power of the state is valid, and the burden of proving the contrary is on him who asserts the invalidity or nullity. City of New Orleans v. Beck, 139 La. 595, 71 So. 883, L.R.A.1918A, 120; Ward v. Leche, 189 La. 113, 179 So. 52; State v. Saia, 212 La. 868, 33 So.2d 665; State v. Rones, 223 La. 839, 67 So.2d 99.

Although the immediate purpose of the proposed fluoridation is to retard and decrease the disease of dental caries in young children, the protection thus given will continue well into adult life. Not only will the proposed fluoridation retard and reduce this disease in the generation of children presently in Shreveport, but its effect will continue into their adult life, and consequently the proposed measure will ultimately be beneficial to all the residents of the city. *who lived here when they were under 12!*

 The health of the children of a community is of vital interest and of great importance to all the inhabitants of the community. Their health and physical well-being is of great concern to all the people, and any legislation to retard or reduce disease in their midst cannot and should not be opposed on the ground that it has no reasonable relation to the general health and welfare. Children of today are adult citizens of tomorrow, upon whose shoulders will fall the responsibilities and duties of maintaining our government and society. Any legislation, therefore, which will better equip them, by retarding or reducing the prevalence of disease, is of great importance and beneficial to all citizens. In our opinion the legislation does bear a reasonable relation to public health.

The appellees insist, and the district judge concluded, that fluoridation of the water to prevent tooth decay is not a matter of public health, but a matter of private health and hygiene. The evidence in this record refutes overwhelmingly this conclusion. Dental caries is one of the most serious health problems in the City of Shreveport, and in the nation as well. The fact that it is not a communicable disease and one that can cause an epidemic does not detract from its seriousness as affecting the health and well-being of the community. The plan for fluoridation,

therefore, bears a reasonable relation to the general welfare and the general health of the community, and is a valid exercise of the power conferred by Section 2.01 of the charter if it is not arbitrary or unreasonable.

The appellees contend that fluoridation of the water supply is arbitrary and unreasonable because it *may* cause serious ill effects to the adult, aged, and ill; that *it is arbitrary to fluoridate the water until* clinical tests have proved that these serious effects will not result. The appellees have failed completely to prove that fluoridation would be harmful to the aged and ill.

There is expert opinion of respectable medical authority that fluorides added to water will have no more harmful effect than fluorides naturally appearing in water, and that in those places where fluorides naturally appear no ill effects have been experienced by the aged or ill of the population. In those places where tests have been conducted no ill effects have been shown. It cannot be said, then, that the City of Shreveport is acting arbitrarily from this point of view.

Appellees contend that it is arbitrary and unreasonable to compel a person to submit to the taking of preventive medicine except for the purpose of controlling the spread of contagious or infectious diseases. Their argument is not entirely appropriate to the instant case. In the first place there is no direct compulsion on anyone to drink the water. The compulsion at most is an indirect one, but it cannot be questioned, of course, that the fluoridation is undertaken with the view that the citizens or a large majority of them will receive its benefits by drinking the public water. The witnesses from the dental profession considered that the addition of fluoride to the water was not medicating it in the generally accepted sense, but was adding to it one of the mineral properties found naturally in water in some sections of the country.

Appellees next argue that it is unreasonable to fluoridate the water when it will reduce the incidence of disease only among a limited class. A health measure is not necessarily arbitrary because it affects primarily one class. It may, even so, be in the interest of the public generally. Ultimately, of course, the fluoridation will benefit the whole population because the retarding of decay extends into adult life of the child who has had the benefit of water containing fluorides. It has long been recognized that a police measure is not objectionable because it does not extend to all classes. In Zucht v. King, 260 U.S. 174, 43 S.Ct. 24, 25, 67 L.Ed. 194, it was said:

"* * * A long line of decisions by this court [has] * * * settled that in the exercise of the police power reasonable classification may be freely applied, and that regulation is not violative of the

equal protection clause merely because it is not all-embracing. * * *" See also West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703; Sturges & Burn Manufacturing Co. v. Beauchamp, 231 U.S. 320, 34 S.Ct. 60, 58 L.Ed. 245.

✓ ▉ There is no merit in appellees' argument that, if the city charter grants to the city council of Shreveport authority to fluoridate its water supply, such action to that extent is a violation of the Fourteenth Amendment of the United States Constitution. The Fourteenth Amendment does not deprive a state or its subdivisions of the right to preserve order or to protect the health of the people under its police power, and in the exercise of its power the legislative branch may interfere with and impair the individual liberty of the citizens in a manner and to an extent reasonably necessary for the public interest, and the courts will not interfere except where the measures invade fundamental rights or are arbitrary, oppressive, or unreasonable. This is not a proper case for judicial interference. See Cooley on Constitutional Law (4th ed.), p. 289; 2 Cooley's Constitutional Limitations (8th ed.), pp. 1223 et seq.; Jacobson v. Com. of Massachusetts, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643; State v. McCormick, 142 La. 580, 77 So. 288, L.R.A.1918C, 262.

For the reasons assigned, the judgment of the district court is reversed and set aside, and plaintiffs' suit is dismissed at their costs.

FOURNET, C. J., and MOISE, J., dissent.