18503

Carlton HALL, Appellant, v. Mayor Lester BATES, William H. Tuller, William C. Ouzts, R. E. L. Freeman, Hyman Rubin, Individually and collectively and as City Council of the City of Columbia, a municipal corporation, and Cary Burnett, City Manager, Respondents.

(148 S. E. (2d) 345)

512

*David A. Fedor, Esq.,* of Columbia, *for Appellant,*

*Messrs. John W. Sholenberger* and *Edward A. Harter, Jr.,* of Columbia, *for Respondents,*

May 10, 1966.

Bussey, Justice.

In this action plaintiff-appellant sought an injunction against the City of Columbia to prevent the fluoridation of its water supply. The appeal is from an order of the circuit court refusing the injunction and dismissing the complaint.

The record shows that since 1950 thirty municipalities in South Carolina have added fluorides to their respective municipal water supplies. In addition, the water supplies of twenty-five municipalities in this state have natural fluoride content of 0.7, or more, parts per million. The South Carolina State Board of Health, pursuant to statutory authority, on September 21, 1959, adopted and filed in the Office of the Secretary of State a rule regulating the addition of fluoride in any form to public and semi-public water supplies in this state. Such rule is contained in the 1962 Code of Laws, Vol. 17, 311.

The question of adding fluorides to the water supply of the City of Columbia, in order to improve the dental health of its citizens by reducing the incidence of decay, has been under consideration by said city since 1951. In February, 1965, Columbia City Council held a public hearing on the matter and heard arguments pro and con as to whether such fluoridation should be undertaken. Following this hearing, City Council concluded that its water supply should be fluoridated and instructed the city manager to proceed to take the necessary steps to implement that decision. This injunction proceeding followed.

The plaintiff resides at a location outside the City of Columbia, but is also the owner of a residence within the city. Both residences are in the service area of the water system of the city. Plaintiff suffers from a severe arthritic condition and contends that the addition of fluorides to the public water supply is harmful to his person and that the action of the city in fluoridating its water supply is an invasion of his constitutional rights.

Rather voluminous testimony was received by the lower court. The plaintiff offered expert testimony tending to prove that fluoridation would not be beneficial to anyone and would, in fact, be harmful to many people, including the plaintiff. Evidence on behalf of the defendants is to the effect that the action taken by City Council was approved

and urged by, among others, the City Board of Health, the Richland County Board of Health, the South Carolina State Board of Health, the Columbia Medical Society, the Richland County Dental Society, the Central South Carolina Dental Society, and the South Carolina Dental Society. While professional opinion thereabout is not unanimous, we think the record here fairly reflects that the vast majority of medical, dental and scientific opinion, after years of research and study, is to the effect that the fluoridation of public water supplies, properly accomplished, is of tremendous benefit in the prevention of caries and that such is not harmful to anyone. The principal benefit from such fluoridation is to children during their formative years. The record also fairly reflects, we think, that while fluoridation can be provided for such children by other means, as a practical and economic matter the only way that the rank and file of children can consistently be provided with the benefit of fluoridation is through the water supply. While there are, of course, some sharp conflicts in the evidence, we will not here deal further with the evidence because there are findings of fact by the circuit judge, which are not only fully supported by the evidence, but unchallenged on appeal. The circuit court found, *inter alia,* "that placing fluoride in the water supply in the City of Columbia is not, in fact, harmful to the health of the citizens, but is, in fact, beneficial to the health of the citizens of the city; that fluorides will not be harmful to the plaintiff despite plaintiff's testimony and apparent fears."

While the plaintiff's exceptions are several, the only questions stated and argued in his brief are constitutional questions. He contends (1) that fluoridation unduly infringes upon his individual liberty in contravention of the due process clause of Article I, Section 5, of the South Carolina Constitution, and the similar clause in the Fourteenth Amendment to the Federal Constitution; and (2) that fluoridation violates the equal protection clauses of the cited constitutional provisions.

Except for the alleged unconstitutionality of the action of the defendants, the plaintiff does not challenge the power of the city to take the action which it did. While the brief of plaintiff states two constitutional questions, he frankly admits that his principal legal contention is that the action of City Council deprives him of "liberty without due process of law," in violation of his constitutional rights. In fact, his argument of the second question in his brief is largely a continuation of his argument of the first stated question. In brief, the plaintiff's contention is that he will be compelled to drink the fluoridated water because there is no other practical source of supply; that such fluoridated water is not beneficial to him, and that he is deprived of his liberty to decide of his own free will whether fluorides would be advantageous or disadvantageous to his own personal health. It possibly should be noted that the plaintiff does not contend that he has no other source of water supply, but merely that the city system is his only practical source of supply. He apparently concedes that if caries were contagious, the action of City Council would be within constitutional limits, but strenuously urges that regardless of how beneficial the prevention of caries might be to the health of people in general, the city has no right to deprive him of his liberty to decide to drink water which is not fluoridated in the absence of a serious danger of contagion.

While this court has not had previous occasion to consider any question arising out of the fluoridation of a public water supply, the courts of our sister states have had occasion to consider attacks upon fluoridation made on almost every conceivable ground, including all of the arguments advanced by plaintiff here. The entire weight of authority in the United States is against the several contentions and arguments of the plaintiff. A fairly recent fluoridation case is that of *Schuringa et al. v. City of Chicago,* (1964), 30 Ill. (2d) 504, 198 N. E. (2d) 326, cert. den. 85 S. Ct. 655, 379 U. S. 964, 13 L. Ed. (2d) 558. The opinion therein would rather indicate that even more voluminous testimony

was taken in the trial of that case than in the instant case. We quote from that decision the following pertinent language:

"The first issues thus confronting us are whether the fluoridation of water is so related to the public health as to constitute it a proper exercise of the police power, and whether fluoridation is reasonably necessary and suitable for the protection of the public health.

"And while the matter is one of first impression in this jurisdiction, it is a question which has been the subject of much litigation in our time. In this country, on the occasions where the matter has been subjected to judicial scrutiny, there has been unanimous accord that the fluoridation of water by one part of fluoride to a million parts of water is a reasonable and proper exercise of the police power in the interest of the public health, and that it is not subject to constitutional infirmities thus far conceived. (See: *Chapman v. City of Shreveport,* 225 La. 859, 74 So. (2d) 142, *certiorari* denied, 348 U. S. 892, 75 S. Ct. 216, 99 L. Ed. 701; *Kraus v. City of Cleveland,* 163 Ohio St. 559, 127 N. E. (2d) 609, *certiorari* denied 351 U. S. 935, 76 S. Ct. 833, 100 L. Ed. 1463; *Dowell v. City of Tulsa* (Okla. 1954) 273 P. (2d) 859, 43 A. L. R. (2d) 445, *certiorari* denied 348 U. S. 912, 75 S. Ct. 292, 99 L. Ed. 715; *de Aryan v. Butler,* 119 Cal. App. (2d) 674, 260 P. (2d) 98, *certiorari* denied 347 U. S. 1012, 74 S. Ct. 863, 98 L. Ed. 1135; *Froncek v. City of Milwaukee,* 269 Wis. 276, 69 N. W. (2d) 242; *Readey v. St. Louis County Water Co.,* (Mo. 1961), 352 S. W. (2d) 622; *Baer v. City of Bend,* 206 Or. 221, 292 P. (2d) 134; *Kaul v. City of Chehalis,* 45 Wash. (2d) 616, 277 P. (2d) 352; *City Commission of City of Fort Pierce v. State ex rel. Altenhoff,* (Fla. App. 1962) 143 So. (2d) 879. Cf. *Wilson v. City of Council Bluffs,* 253 Iowa 162, 110 N. W. (2d) 569.)"

The plaintiffs in that case advanced, among others, the same arguments advanced by the plaintiff in the instant

case. With respect to such we quote further from the opinion.

"Finally, plaintiffs assert that the program is an improper exercise of the police power because tooth decay is not a communicable or epidemic disease; because only a small segment of the population, the city's children, are benefited; and because it(s) subjects all users to mass medication in violation of the fundamental and inalienable right of each individual to determine whether or not they wish to be so treated. These constitutional claims have both their source and their unanimous rejection in the decisions of our sister States, heretofore cited, which have treated upon the problem and we see no useful purpose in a detailed analysis or repetition of the grounds for rejection. Suffice it to say that those well-reasoned precedents, with which we are in accord: (1) sustain the right of municipalities to adopt reasonable measures to improve or protect the public health, even though communicable or epidemic diseases are not involved; (2) hold that the benefits of fluoridation which carry over into adulthood absolve such programs of the charge of being class legislation; and (3) conclude that fluoridation programs, even if considered to be medication in the true sense of the word, are so necessarily and reasonably related to the common good that the rights of the individual must give way."

We deem it unnecessary to review here each of the authorities cited by the Illinois court, or to cite any additional authorities. Collectively, those cases, as well as other authorities in this country, completely support the conclusions reached by the Illinois court. Plaintiff cites no case in point which holds contrary to the foregoing, and it is at least worthy of note that the United States Supreme Court has repeatedly denied *certiorari* in these fluoride cases for lack of a substantial federal question. In addition to the complete weight of authority from other states in the Union against plaintiff's position in the instant case, we find nothing in any of the prior decisions of this court which would lend support to plaintiff's contentions.

Previous decisions of this court have recognized that an ordinance or regulation of a municipality under its police powers may be so unreasonable as to violate constitutional privileges and that it is within the province of this court to determine whether such ordinance or regulation is so unreasonable. *City of Columbia v. Alexander*, 125 S. C. 530, 119 S. E. 241, 32 A. L. R. 746; *Ward et al. v. Town of Darlington*, 183 S. C. 263, 190 S. E. 826. In the last cited case the court said, however,

"It must be borne in mind that in the exercise of its powers to preserve and protect the health of the inhabitants of the municipality, the range of the exercise of the powers of the council is much wider than in its relation to other matters."

Plaintiff places strong reliance on the decision of this court in the case of *Kirk v. Board of Health of City of Aiken*, 83 S. C. 372, 65 S. E. 387, 23 L. R. A., N. S., 1188, wherein this court said,

"It is always implied that the power conferred to interfere with these personal rights is limited by public necessity. From this it follows that boards of health may not deprive any person of his property or his liberty, unless the deprivation be made to appear, by due inquiry, to be reasonably necessary to the public health; * * *

"In passing upon such regulations and proceedings, the courts consider, first, whether interference with personal liberty or property was reasonably necessary to the public health, and second, if the means used and the extent of the interference were reasonably necessary for the accomplishment of the purpose to be attained."

We see no support for plaintiff's position in the foregoing language, quoted and relied upon by him. To the contrary, in the instant factual situation, we think the stated principles support the position of the defendants.

Even if we do not take judicial notice thereof, as other courts have done, the record shows that dental health is of

great importance to the general health of people. The defendants, after due inquiry, determined the action taken to be reasonably necessary to the public health. The evidence shows that the benefits of fluoridation carry over into adulthood, and that eventually, with the passage of time, the entire population using the Columbia water supply will be benefited thereby. The record also reflects that the only practical method of fully achieving the beneficial effects of fluoride is to put the same into the water system.

Unchallenged on this appeal is a finding of fact that the consumption of fluoridated water will not be harmful to the plaintiff. Plaintiff apparently sincerely believes otherwise, and it is no doubt true that the public water supply of the City of Columbia is his only practical source of supply in that such is more economical and convenient to him. But, the extent of any interference with the personal rights of the plaintiff is, at most, minimal when compared with the ultimate benefits to the citizens in general.

Under these circumstances and on the record before us, we conclude that the action taken by the City of Columbia was reasonably necessary to the public health, and that the means used and the extent of any interference with the rights of the plaintiff were reasonably necessary to the accomplishment of the purpose sought to be attained. Such action was a legitimate exercise of the police power vested in it, and not unconstitutional on either of the grounds urged by the plaintiff.

The judgment of the circuit court is, accordingly,

Affirmed.

Moss, Acting C. J., and Lewis and Brailsford, JJ., concur.

Legge, Acting J., dissents.

Legge, Acting Justice (dissenting).

As stated in *Gasque, Inc. v. Nates*, 191 S. C. 271, 2 S. E. (2d) 36, and again in *McCoy v. Town of York,* 193 S. C.

390, 8 S. E. (2d) 905: "To be valid as a legislative exercise of police power, the legislation must be clearly demanded for the public safety, health, peace, morals or general welfare." At most, the record in the present case shows that in the opinion of many experts fluoridation of the public water supply is not harmful and is beneficial in reducing the incidence of dental cavities in young children. That, I think, falls short of a showing of such necessity in the interest of an endangered public health as is required by the constitutional test just mentioned. For this reason I respectfully dissent.