Dear Dr. Barsley:
This office is in receipt of your request for an opinion of the Attorney General in regard to community water fluoridation for the City of Baton Rouge inasmuch as a decision was made at the August 2004 meeting of the Fluoridation Advisory Board to pursue such fluoridation. Pertinent to this decision you ask the following questions:
Does the City/Parish Council have the authority to mandate community water fluoridation by the passage of an ordinance?
Assuming such an ordinance is enacted, must the Baton Rouge Water Company (BRWC) abide by it?
Is there any existing provision in law or regulation that would allow the BRWC to pass on either capital cost or continuing costs (or both) to end users?
Assuming such an ordinance is enacted and the costs are paid, what, if any, power do other parishes and/or municipalities that receive water from the BRWC possess that might hinder or forestall the completion of this effort?
In the case of Attaya v. Town of Gonzales, 192 So.2d 188
(La.App. 1966) involved a suit for an injunction prohibiting governing authorities of the town from fluoridating municipal water supply. While, the court noted that the subject of fluoridation was controversial, it was found that fluoridation of a municipal water supply is a legitimate exercise of the police power vested in a municipal governing authority, and relied upon the ruling in _Chapman v. City of Shreveport, 225 La. 859, 74 So.2d 142
(1954).
In the latter cited case the Louisiana Supreme Court observed the city charter gave all the power necessary or desirable to promote the general welfare of the city and the safety, and health of its inhabitants and concluded as follows:
 Accordingly, if fluoridation of the water supply bears any reasonable relation to the public health, it can be undertaken by the city under the express provisions of this section of its charter. Moreover, it is well settled that courts will not interfere with the legislative authority in the exercise of its police power unless it is plain and palpable that such action has no real or substantive relation to the public or safety or general welfare.
We further note in Atty. Gen. Op 01-41 that this office recognized that a police jury is empowered to provide for the general welfare of its citizens, and stated, "Clearly, an improved and/or more efficient water system will benefit the citizens of Union Parish."
In Atty. Gen. Op 97-312 this office stated that police power as generally defined extends to protection of the lives, health, and property of the citizens, and concluded, "The pursuit of any lawful trade or business may be subjected to reasonable regulations under the police power of the state, for the protection of the public health or safety, and the courts will interfere with the action of local legislative authority only when it is plain and palpable that such action has not real or substantial relation to the public health, or safety, or to the general welfare."
We would therefore conclude in response to first question that the City/Parish Council has the authority to mandate community water fluoridation by passage of an ordinance.
For the reasoning as stated above with regard to the city's exercise of its police power, we must conclude that the Baton Rouge Water Company would be required to abide by an ordinance which requires fluoridation of its water supply.
In response to your third question as to whether there is any law or regulation that would allow the Baton Rouge Water Company to pass on either capital cost or continuing cost, or both to the users, we would conclude if the governing authority mandates fluoridation, it would be reasonable to further mandate that the expense of the capital cost or continuing cost or both be passed on to the users.
Your final question is based upon the assumption of having an ordinance for fluoridation with the costs thereof to be passed on to the customers, and in this regard what power, if any, do other parishes or municipalities that receive the water from BRWC possess that might hinder or forestall the completion of this effort.
We do not find that other parishes or municipalities would have any power to control the water supply coming from outside of their jurisdiction, and could not interfere with the police power of the municipality where the company is located in relation to its public health.
Accordingly, we must conclude that the occupants in the area outside the Parish boundaries that purchase the utility would be required to follow the rates, rules and regulations set by the political subdivisions for the sale and distribution.
In Atty. Gen. Op. 93-500 this office cited R.S. 33:4164 which provides in pertinent part, "The rate at which such water is sold may be different for parties within the political subdivision furnishing the water as compared to parties of the same class located outside
the political subdivision furnishing the water, provided the rates charged the various classes outside the subdivision shall be equal and uniform . . . ."
We hope this sufficiently answers your requests, but if we can be of further assistance, do not hesitate to contact us.
Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
By: ____________________________
 BARBARA B. RUTLEDGE Assistant Attorney General
CCFJR./bbr