Dear Dr. Goldsby:
As the mayor for the Town of Amite, Louisiana, and pursuant to the request of the Town of Amite City Council, you have formally requested an Attorney General Opinion on the issue of a private owner of a shopping center or any tenant thereof restricting public parking. You asked the following questions:
 1) May the owner of a private shopping center legally restrict public parking in the shopping center's parking lot?
 2) May a tenant of the shopping center legally restrict public parking?
 3) Assuming that restrictions on public parking at a private shopping center are proper, may the owner of that shopping center thereafter sign an affidavit for trespassing on private property for any person violating those parking restrictions?
According to Louisiana jurisprudence, a private property owner may restrict parking on private property under certain conditions. In King v. A-1 Auto Service, 450 So. 2d 1000
(La.Ct.App. 1 Cir. 1984), the First Circuit, Louisiana Court of Appeal, held that a private property owner "conducting business with the public is free to restrict parking on his property as he chooses; however, those restrictions must be made known to the public by signs, posts, fences or other warning devices."
Moreover, in Esmele v. Violet Trapping Co., 187 La. 728,175 So. 471 (La. 1937), the Louisiana Supreme Court extended the same right to a tenant. The Court recognized: "A lessee who has been put in possession of a thing, with legal right to use it, and, if disturbed in his possession by trespasser, has right of action against trespasser."
La. R.S. 32:1736 regulates the towing of motor vehicles from private property. That statute defines "parking areas" as ". . . areas used by the public as a means of access to and egress from, and for the parking of motor vehicles by patrons of a shopping center, business, factory, hospital, or institution. The statute further provides in subsection C that property owners "who tow unauthorized vehicles from their property or parking areas shall place signage in clearly visible locations at the entrances and exits to such *Page 2 
property warning motorists that unauthorized vehicles may be towed." A private property owner who has contracted with a towing company to remove unauthorized vehicles must also post signs bearing the name, address and phone number of the towing company and the uniform towing fee in lettering that is, at least, two-inches tall. Furthermore, the statute requires that a copy of the towing contract, which defines the parking rules and reasons for towing, must be retained at the business offices of both the property owner and the towing company.
Hence, it is the opinion of the Attorney General that the owner of a private shopping center or any tenant lawfully occupying a portion of that shopping center, may restrict public parking in the shopping center's parking lot as long as adequate notice is given to the public of any parking restrictions being imposed as outlined above.
It is further the opinion of the Attorney General that the owner of a shopping center may lawfully request the issuance of a summons from a magistrate or peace officer pursuant to La.R.S.14:63 and/or La. R.S. 14:63.1,[1] in conjunction with La.C.Cr.P. arts. 211.1 and 202 for the misdemeanor criminal offense of criminal trespass[2] or entry on any place after being forbidden for any person parking on private property "without express, legal, or implied authorization" of the shopping center's owner. Art. 202 would further require that the shopping center owner execute "an affidavit specifying, to the best of his knowledge and belief, the nature, date, and place of the offense, and the name and surname of the offender if known, and of the person injured if there be any . . ." Furthermore, an arrest warrant may be requested in lieu of a summons if the peace officer has reasonable grounds to believe that the offender will not appear if summoned or that the offender will cause injury to himself, another or damage another's property if he is not immediately arrested.
This opinion is consistent with prior Attorney General opinions on the same subject. See Attorney General Opinion No. 99-83, April 6, 1999 (law enforcement officers must enforce handicapped parking violations on private property which provides public parking for shopping patrons); Attorney General Opinions No. 82-480, June 28, 1982; No. 84-750, February 25, 1985; and No. 84-808. September 28, 1994, (municipalities may adopt ordinances placing restrictions on parking at privately owned shopping centers upon the request of the private property owner); Attorney General Opinion No. 79-1076, October 12, 1979 (state agency leasing private property may have police tow unauthorized vehicles at owners' expense as long as signs are posted notifying the *Page 3 
public that illegally parked vehicles will be towed to a designated area at their expense) and Attorney General Opinion, February 13, 1971 (where shopping center parking lots are open to the public, city may thereafter regulate traffic thereon.)
I hope the foregoing opinion has adequately addressed your questions.
 Very truly yours,
 CHARLES C. FOTI JR.
 ATTORNEY GENERAL
 BY: __________________________
 PAUL R. KNIGHT
 Assistant Attorney General
 *Page 4 
 ATTACHMENT
Citation Search Result Rank 1 of 7 Database
La. Atty. Gen. Op. No. 99-83 LA-AG
La. Atty. Gen. Op. No. 99-83, 1999 WL 297627 (La.A.G.)
(Cite as: 1999 WL 297627 (La.A.G.))
 Office of the Attorney General
 State of Louisiana
 *1 Opinion No. 99-83
 April 6, 1999
 70 — Motor Vehicles — Control Regulation
R.S. 40:1742
R.S. 40:1400
R.S. 32:41

Law Enforcement officers are mandated to provide for and enforce a penalty for violations of handicapped parking on private property which has parking for the general public doing business at the location.
Hon. John C. "Juba" Diez Louisiana House of Representatives District 59 42126 Hwy. 931 Gonzales, LA 70737
Dear Representative Diez:
This office is in receipt of your request for an opinion of the Attorney General in regard to handicapped parking violations. You indicate you have been consulted by local law enforcement officers on this matter and they feel they do not have the authority to issue a citation to an individual who parks in a handicapped parking space on privately-owned property. Accordingly, you present the following questions:
1. Does R.S. 40:1742 authorize law enforcement officers to enter onto privately-owned businesses in order to issue tickets to those individuals who unlawfully park in parking spaces designated for use by the handicapped; and
2. Is there another provision of state law which would prohibit law enforcement officers from performing this task?
We find in Title 40, Public Health and Safety, Chapter 8, Building Regulations, Part V, Equal Access to Public Facilities for Physically Handicapped, is R.S. 40:1742, entitled, Parking Spaces for Certain Disabled Persons, providing in pertinent part as follows:
A(1) Each state agency and political subdivision having jurisdiction over street parking or publicly owned and operated parking facilities shall provide a minimum number of specially designed and marked motor vehicle parking spaces for the exclusive use of persons whose vehicles are identified by license plates or parking cards for the mobility impaired which contain the word "handicapped" embossed on the license plate or parking card. The motor vehicle parking spaces shall adhere to the ADAAG specifications. The minimum number of such parking spaces shall be established by ADAAG.
(2) * * * * * * * * * * * * * * * * * * * * * * * * * *
(3) * * * * * * * * * * * * * * * * * * * * * * * * * *
B(1) Each state agency and political subdivision having jurisdiction over state parking, publicly owned and operated parking facilities, public facilities, or public facilities for accommodation shall provide for and enforce *Page 5 
a penalty of two hundred seventy-five dollars for persons who park in spaces for the mobility impaired who do not have a license plate for the mobility impaired which contains the word "handicapped" embossed on the license plate or a properly displayed parking card issued pursuant to R.S. 47:463.4 or 463.4.1.
(2) In addition to such fine, the offender may also be required to pay the towing fee and any storage costs which are incurred.
(3) (a) In addition to all fines, fees, costs, and punishment authorized by this Subsection, any parish which institutes a formal program of utilizing disabled volunteers to assist the law enforcement agency in enforcing the provisions of this Subsection may provide for and enforce an additional twenty-five dollar fine for each violation of such provisions.
*2 (b) All monies collected by the court from such additional fine shall be forwarded by the officer of the court who collects the same to the parish governing authority within thirty days after the fine is collected.
(c) The proceeds of such additional fine shall be used by the parish governing authority exclusively to fund the formal program of utilizing volunteers to aid in enforcing the provisions of this Subsection.
(4) Notwithstanding R.S. 40:1743, any owner or lessee of a public facility who fails to maintain spaces reserved and designated for the exclusive use of vehicles bearing a special license plate or parking card issued to a mobility impaired driver free of obstructions shall be fined not more than five hundred dollars.
Under this provision we find political subdivisions "shall" provide for and enforce a penalty for persons who park in spaces for the mobility impaired who do not have a license for such parking. We further note that this extends to political subdivisions having jurisdiction over "publicly owned and operated parking facilities" as well as "public facilities". Moreover, the statute further provides "any owner or lessee of a public facility who fails to maintain spaces reserved exclusively for such vehicles" shall be fined. We must conclude by including "public facility" in addition to "publicly owned and operated facilities", indicates enforcement would apply to parking by the public on private property opened for business to the general public. This conclusion is supported by R.S. 40:1732 wherein the definitions are set forth for Part V, Equal Access to Governmental and Public Facilities for Physically Handicapped, to include in paragraph (9), "(a) "Public facility" means a commercial facility or place of public accommodations as such terms are defined in the ADAAG", (Americans with Disabilities Act Accessibility Guidelines) and "(b) A "Public facility" does not include a governmental facility."
Moreover, while this office observed in Atty. Gen. Op. No. 96-148 that political subdivisions may regulate parking and various other traffic controls on highways within their corporate limits that are not state maintained, and any additions first approved in writing by the state department of highways, the opinion further states, "Municipalities may also, upon request of the owner or manager of a parking area, adopt rules regulating traffic and parking within that area for safety and convenience."
The latter statement is consistent with the observation in Atty. Gen. Op. No 84-808 which relied upon R.S. 32:41(D) in holding as follows:
In conclusion, it is the opinion of this office that based on the authority *Page 6 
of the revised statutes, municipal law enforcement officers have the authority to enforce traffic ordinances in parking areas such as those in shopping centers when requested by the owner or manager of the shopping center.
R.S. 32:41(D), Power of local municipal authorities, provides as follows:
*3 D. Upon the request of either the owner or the person in charge of the general operation and control of a parking area, local municipal authorities may adopt local ordinances to:
(1) Order stop signs, yield signs, or other traffic control devices erected at specified entrance or exit locations to a parking area or at an intersection in the parking area.
(2) Regulate traffic in the parking area, including regulation by means of traffic control signals.
(3) Prohibit or regulate the turning of vehicles or specified types of vehicles at intersections or other designated locations in the parking area.
(4) Regulate the crossing of a roadway in the parking area by pedestrians.
(5) Designate a separate roadway, drive, or lane in the parking area for one-way traffic.
(6) Prohibit, regulate, restrict, or limit the stopping, standing, or parking of vehicles in specified areas of the parking area.
(7) Designate safety zones, loading zones, and other restricted areas in the parking area.
(8) Provide for the removal and storage of vehicles parked or abandoned in the parking area during snowstorms, floods, fires, or other public emergencies, or found unattended in the parking area, if the vehicles constitute an obstruction to traffic or if stopping, standing, or parking is prohibited, and for the payment of reasonable charges for the removal and storage by the owner or the operator of the vehicle.
(9) Adopt additional reasonable rules with respect to traffic and parking in a parking area as local conditions may require for the safety and convenience of the public or users of the parking area.
We note that the R.S. 40:1742 designates a portion of the fine for "any parish which institutes a formal program of utilizing disabled volunteers to assist the law enforcement agency in enforcing the provisions of this Subsection". This brings our attention to R.S. 40:1400, Handicapped Parking Enforcement, which establishes within the office of state police a program to train and utilize volunteers in the enforcement of handicapped parking restrictions. The statute provides, after completion of training, that the volunteer may collect certain information substantiating a violation and submit such information to the respective state police troop headquarters in accordance with procedures established for the program by the office of state police. We have been informed that this is not yet operational inasmuch as R.S.40:1400(B) provides, "The Program will become operative if and when funds are transferred to the office of state police from the office of disability affairs for such purpose." Therefore, when the program becomes operative this provision will allow disabled volunteers to assist the parish law enforcement in enforcing handicapped parking.
However, it is our conclusion with respect to violations of handicapped parking that at this time law enforcement officers are not only authorized but are mandated without request of the owner under R.S. 40:1742 to provide for and *Page 7 
enforce a penalty for violations of handicapped parking on "public facilities" which we find is commercial private property which has parking for the general public doing business at the location. R.S. 32:41 extends this authority to other traffic regulations on private property upon request of the owner and adoption of an ordinance. Of course, we recognize that often violations of handicapped parking on private property will not come to the attention of the law enforcement without a request of the property owner or a situation where there are volunteers assisting in the enforcement.
*4 We hope this sufficiently answers your inquiry, but if we can be of further assistance, do not hesitate to contact us.
Sincerely Yours, Richard P. Ieyoub Attorney General Barbara B. Rutledge Assistant Attorney General La. Atty. Gen. Op. No. 99-83, 1999 WL 297627 (La.A.G.) *Page 8 
 ATTACHMENT
Citation Search Result Rank 4 of 7 Database
La. Atty. Gen. Op. No. LA-AG
La. Atty. Gen. Op. No. 84-750, 1985 WL 203445 (La.A.G.)
(Cite as: 1985 WL 203445 (La.A.G.))
 Office of the Attorney General
 State of Louisiana
 *1 Opinion No. 84-750
 February 25, 1985
 LAWS — GENERAL ........ 61
R.S. 32:41

An ordinance enacted pursuant to LSA-R.S. 32:41 et 33:401 will be presumed valid, unless the party challenging its validity can establish by plain and palable evidence that the ordinance has no real or substantive relation to the public health or safety or general welfare.
 Ronald J. Brumfield Town Attorney Town of Franklinton 301 Eleventh Avenue Post Office Box 584 Franklinton, Louisiana 70438
Dear Mr. Brumfield,
Your request for an opinion of the Attorney General has been referred to me for research and reply. Your question as I understand it is:
Does the governing authority of the Town of Franklinton have the power to enact an ordinance prohibiting the parking of vehicles in parking spaces designated as reserved for the handicapped, when those parking spaces so designated are located in privately owned shopping centers?
Our system of laws have tended to reflect the attitude that society's needs are of primary concern in drafting legislation. The ordinance in question has as its primary intention to make shopping as comfortable as possible for the handicapped individual by reserving a few select parking spaces for his use. The primary concern of the governing authority is to protect its citizenry. The form of protection chosen must be in compliance with state and local statutes.
The mayor and alderman have the authority to pass all ordinances and to enforce the same by fine, LSA-R.S. 33:401(32). Ordinance 770 is a valid exercise of municipal authority.
The ordinance in question was designed to provide for a segment of the city's population that must be provided special accomodations if they are to enjoy the everyday liberties that the majority enjoy casually. Such an ordinance has a foundation in both our legislation and in its judicial interpretations.
The courts will not interfere with a municipality's legislative authority in the exercise of its police power unless it is plain and palpable that such action has no real or substantive relation to the public health or safety or general welfare. Chapman v. City of Shreveport, 74 So.2d 142. "Ordinance 770 Section 19-40 Handicapped Parking Spaces Reserved" is a valid exercise of the Town of Franklinton's Police power. It is incidental to the care, management and control of the municipality that the mayor and board of alderman enact ordinances that will provide for the needs of its handicapped citizens.
There is a presumption that a municipal ordinance adopted under police power *Page 9 
is valid. The burden of proving the contrary is on him who asserts the invalidity or nullity of the ordinance, Chapman v. City of Shreveport, supra. A municipal ordinance will be held valid despite the fact that it will directly impact more nearly upon a limited class, U.S.C.A. Const. Amend. 14.
In determining the reasonableness of an ordinance, motive of a municipality's aldermen, who enjoy same stature as members of the legislature with respect to their legislative enactments, cannot be questioned, reasonableness of the ordinance itself is the primary issue, City of Crowley Fireman v. City of Crowley, La.App., 264 So.2d 368. The involved ordinance has a reasonable design and is not arbitrary nor capricious. Instead it seeks to assure handicapped citizens that their special needs are provided for by the City of Franklinton.
*2 R.S. 33:402(2) provides that the mayor and alderman have the authority "to adopt measures which are deemed necessary or proper for the protection of strangers and the traveling public or property." The enactment of Ordinance 770 serves this purpose. It is undoubtedly necessary that special provisions be made to accomodate the traveling handicapped individuals of our various communities. As modern technology has increased the handicapped ability to travel, it is incumbent upon elected officials to adequately provide for the necessary conveniences attending this mobility. The ordinance in question is a fair, concerned and reasonable effort at attempting to provide the handicapped citizens of our community with a small number of parking spaces in various shopping centers throughout the city. The mayor and alderman have a duty to provide for the protection of the traveling public, La.R.S. 33:402(2) and Ordinance 770 is a legitimate exercise of this legislative authority.
In certain specific situations, with the authorization of either the owner or the person in charge of a parking area, local authorities may enact ordinances regulating traffic on private parking areas. La.R.S. 32:41 gives the mayor and aldermen the authority to enact ordinances allowing reserved parking spaces for the handicapped on private property only upon the request of either the owner or the person in charge of the general operation and control of the parking area. La.R.S. 32:41 is reproduced below in pertinent parts:
"Section 41. Power of local municipal authorities
D. Upon request of either the owner or the person in charge of the general operation and control of a parking area, local municipal authorities may adopt ordinances to:
(2). Regulate traffic in the parking area, (emphasis provided) including regulation by means of traffic control signals.
Ordinance 770 Section 19-40 is a valid exercise of municipal authority if enacted pursuant to the provisions of La.R.S. 32:41
(reproduced above).
It is our opinion that the Mayor and Alderman of the Town of Franklinton have the authority to enact Ordinance 770, prohibiting the parking of vehicles in parking spaces designated as reserved for the handicapped, even when those reserved spaces are located in privately owned shoppingcenters, based on the provisions of La.R.S. 32:41 and La.R.S.33:402(2).
I hope that this information is helpful to you. If this office may be of further assistance to you in this or in any other matter please do not hesitate to contact me.
 Sincerely, *Page 10 
 William J. Guste, Jr. Attorney General By: Rene Salomon Assistant Attorney General La. Atty. Gen. Op. No. 84-750, 1985 WL 203445 (La.A.G.) *Page 11 
Citation Search Result Rank 5 of 7 Database
La. Atty. Gen. Op. No. LA-AG
La. Atty. Gen. Op. No. 84-808, 1984 WL 195655 (La.A.G.)
(Cite as: 1984 WL 195655 (La.A.G.))
 Office of the Attorney General
 State of Louisiana
 *1 Opinion No. 84-808
 September 28, 1984

MOTOR VEHICLES...........70
R.S. 32:41 D.
Municipal law enforcement officers have authority to enforce traffic ordinances in parking areas when requested by the lot or shopping center's owner or manager.
Honorable Weldon Russell State Representative Post Office Box 548 Amite, Louisiana 70422
Dear Representative Russell,
This will acknowledge receipt of and thank you for your recent inquiry regarding enforcement of traffic ordinances in shopping centers. Your question as I appreciate it is as follows:
Do municipal law enforcement officers have the authority to enforce traffic ordinances in parking areas such as those inshopping centers?
Louisiana law provides for the authority of local municipal officers to adopt local ordinances when requested to do so by the owner or the person in charge of the parking area. LSA-R.S. 32:41
D. states the following:
D. Upon request of either the owner or the person in charge of the general operation and control of a parking area, local municipal authorities may adopt local ordinances to:
(1) Order stop signs, yield signs, or other traffic control devices erected at specified entrance or exit locations to a parking area or at an intersection in the parking area.
(2) Regulate traffic in the parking area, including regulation by means of traffic control signals.
(3) Prohibit or regulate the turning of vehicles or specified types of vehicles at intersections or other designated location in the parking area.
(4) Regulate the crossing of a roadway in the parking area by pedestrians.
(5) Designate a separate roadway, drive, or lane in the parking area for one-way traffic.
(6) Prohibit, regulate, restrict, or limit the stopping, standing, or parking of vehicles in specified areas of the parking area.
(7) Designate safety zones, loading zones, and other restricted areas in the parking area.
(8) Provide for the removal and storage of vehicles parked or abandoned in the parking area during snowstorms, floods, fires, or other public emergencies, or found unattended in the parking area, if the vehicles constitute an obstruction to traffic or if stopping, standing, or parking is prohibited, and for the payment of reasonable charges for the removal and storage by the owner or the operator of the vehicle. *Page 12 
(9) Adopt additional reasonable rules with the respect to traffic and parking in a parking area as local conditions may require for the safety and convenience of the public or users of the parking area.
Therefore, when the owner or manager of a shopping center
requests the participation of local municipal authorities, such local ordinances as speed limits and stop signs may be adopted. The revised statutes also provide for the enforcement of the ordinances. R.S. 32:5 provides:
All law enforcement officers of this state or of any political subdivision thereof invested by law with authority to direct, control, or regulate traffic are authorized to enforce the provisions of this Chapter and regulations of the department and the commissioner adopted pursuant hereto, within the respective territorial jurisdictions, except as otherwise provided by law or this Chapter.
*2 In conclusion, it is the opinion of this office that based on the authority of the revised statutes, municipal law enforcement officers have the authority to enforce traffic ordinances in parking areas such as those in shopping centers
when requested by the owner or manager of the shopping center.
Thank you again for writing. If I may be of further assistance to you on this or another matter, please do not hesitate to call on me.
Sincerely,
William J. Guste, Jr. Attorney General By Rene I. Salomon Assistant Attorney General La. Atty. Gen. Op. No. 84-808, 1984 WL 195655 (La.A.G.) *Page 13 
Citation Search Result Rank 6 of 7 Database
La Atty. Gen. Op. No. LA-AG
La. Atty. Gen. Op. No. 82-480, 1982 WL 186209 (La.A.G.)
(Cite as: 1982 WL 186209 (La.A.G.))
 Office of the Attorney General
 State of Louisiana
 *1 Opinion No. 82-480
 June 28, 1982

MUNICIPALITIES 71
R.S. 32:41
Municipalities may prohibit parking of vehicles exceedin a certain weight on public parking areas provided it is done so at the request of the owner or person in charge of the parking area.
Mr. R.C. Ratcliff Chief of Police 1663 Highway 90 E. Morgan City, Louisiana 70381
Dear Chief Ratcliff,
Your request for an opinion of this office has been referred to the Criminal Division for research and reply. Your question, as I appreciate it concerns the validity of an ordinance passed by the City Council of Morgan City.
The ordinance which you refer to prohibits vehicles exceeding one ton from parking on the public parking area of ashopping center, department store, or other business premises, except when loading or unloading.
The City of Morgan City is governed by a special legislative charter, Act 99 of 1871. Section 3 of the Act defines the powers of the council. It provides:
`. . . Concilmen shall have power . . . to pass any by-laws and ordinances in writing, not inconsistent with the constitution and laws of the United States and of this State, as they may deem proper in relation to the public markets, streets, highways, alleys, and sidewalks . . .'
Section 15 of Act 99 further provides:
`(The) . . . Mayor and Council shall furthermore have power to prevent the stoppage or obstruction of the streets, roads and other public places of the town, and to adopt and carry into effect ordinances for that purposes . . .'
Additionally, under LSA-R.S. 32:41, municipalities are authorized to adopt ordinances regulating traffic on highways other than state maintained highways within their corporation limits. Subsection D. of R.S. 32:41 provides:
`D. Upon request of either the owner or the person in charge of the general operation and control of a parking area, local municipal authorities may adopt local ordinances to:
. . .
(2) Regulate traffic in the parking area, including regulation by means of traffic control signals.
. . .
(6) Prohibit, regulate, restrict or limit the stopping, standing or parking of vehicles in specified areas of the parking area.
. . .
(9) Adopt additional reasonable rules with respect to traffic and parking in a parking area as local conditions may require for the safety and convenience *Page 14 
of the public or users of the parking area.'
It should also be noted that municipal ordinances enacted pursuant to police powers vested in a municipality are presumed to be valid. City of Crowley Firemen v. City of Crowley,264 So. 2d 368 (La.App. 3rd Cir. 1972). A valid exercise of the police power of a municipality requires that such actions be reasonably related to the public health, morals, and general welfare and the means adopted by an ordinance must be reasonably adapted to a public end and must not be arbitrary, oppressive, or unreasonable. City of Crowley, supra.
*2 The police powers granted to the city council by Act 99 and the provisions of R.S. 32:41 give the council the power to adopt ordinances regulating parking in public parking areas provided it is done at the request of either the owner or the person in charge of the general operation of the parking area. The ordinance in question seeks to advance legitimate concerns of the city and does not appear to be arbitrary or unreasonable. The ordinance is therefore a valid exercise of the police powers of the city.
If this office can be of any further assistance in this or any other matter, please don't hesitate to contact us again.
Sincerely,
William J. Guste, Jr. Attorney General By: Rene Salomon Assistant Attorney General La. Atty. Gen. Op. No. 82-480, 1982 WL 186209 (La.A.G.) *Page 15 
Citation Search Result Rank 7 of 7 Database
1978-79 La. Op. Atty. Gen LA-AG
1978-79 La. Op. Atty. Gen. 120, La. Atty. Gen. Op. No. 79-1076,
1979 WL 38099 (La.A.G.)
(Cite as: 1979 WL 38099 (La.A.G.))
 Office of the Attorney General
 State of Louisiana
 *1 Opinion No. 79-1076
 October 12, 1979

15-A — CONSTITUTIONAL LAW
State agency's right as lessee of private property to have unauthorized vehicles towed at owner's expense. L.R.S. 32:472
Mr. W.T. Sanidas Director Administrative Services State of Louisiana Information Processing Authority P.O. Box 44095 Baton Rouge, Louisiana 70804
Dear Mr. Sanidas:
Your request for an opinion has been referred to the undersigned for reply.
In your letter of September 14, 1979, you ask if the Louisiana Information Processing Authority, a State agency, may remove cars parked without permission on the Authority's leased private parking lots. We are of the opinion that both the jurisprudence and local ordinances permit the towing of unauthorized cars from your private parking spaces.
Although the authority and procedures involved with towing cars off public property have been questioned (See Remm v. Landrieu,418 F. Supp. 542; and Gillam v. Landrieu, 455 F. Supp. 1030), the right of a private land owner to remove unauthorized vehicles from his property is well-established. In Fendler v. Texaco,499 P. 2d 179, the court held that the removal of unauthorized vehicles from a shopping center parking lot was not a conversion nor was the act constitutionally defective (at p. 184). In the 1974 Florida case of Murrell v. Trio Towing Service, Inc., 294 S. 2d 331, the court noted the `right of the owners of the apartment complex to have an automobile removed from the premises if it is parked in an unmarked or no parking area in the parking lot.' A private parking Lot leased by a public agency would certainly fall within the definition of a private lot. Merely because the state is the lessee does not in this instance indicate any sufficient change in the character or use of the property. The Authority, therefore, may legally have vehicles parked in unauthorized areas removed. (See also Kunde v. Biddle,353 N.E. 2d 410, and Hopper v. Bills, 232 So. 2d 296.)
Two ordinances of the City of Baton Rouge sanction the removal of unauthorized vehicles from private lots. The Traffic Code, Title 11, in parts (d) and (e) of Section 172 make parking on private property a criminal act. Moreover, Section 357 of Title II expressly resolves the Authority's problem.
Section 357. Removal of vehicles from private property.
Private property owners, whether commercial or residential, have the power, as authorized by general law, to cause vehicles to be removed from their *Page 16 
property illegally situated thereon. In any case where a private property owner requests any law enforcement agency having jurisdiction, to cause to be removed from private property a vehicle said by the private property owner to be illegally situated on his private property and has filed with such law enforcement agency an acceptable indemnification agreement, such law enforcement agency shall be authorized and empowered to cause said vehicle to be removed by wrecker service in accordance with established policies and procedures for obtaining of wrecker services by law enforcement agencies in East Baton Rouge Parish. Wrecker services provided under the authority of this section shall be licensed, bonded and registered with the city-parish government and shall not charge fees in excess of the approved fee schedule as adopted and in force in the City of Baton Rouge. (Emphasis added)
*2 As envisioned by this ordinance, the local police upon request will tow away any unauthorized vehicles in the Authority's parking spaces, provided there is a properly executed indemnification agreement.
A recurring problem in the jurisprudence is who shall be responsible for the expense of towing. (See Knude and Murrell, cited above.) `In the absence of a Statute' (Murrell), the cases prohibit the retention of the towed vehicles for failure to pay the towing fee. Louisiana Revised Statute 32:472 makes the return of a towed vehicle contingent `upon payment of such costs as may be fixed by the policing authority of the municipality for the violation. The costs so fixed shall cover all charges for removing the vehicle to the place of holding and all other costs incurred during the period of holding.' Title II, Section 171(b) fixes the towing charge at fifteen dollars. These statutes ensure the owner of the vehicle will be responsible for the expense of towing.
The pertinent Louisiana case on the subject is Gillam, cited above. Therein, the plaintiffs attack ordinances of New Orleans which allowed the New Orleans Police to tow cars from public property and to impound vehicles found on private property. The court held that New Orleans ordinance 42-43 (similar to Baton Rouge ordinance 2-357, cited above, except that in New Orleans, the vehicle is impounded by a `boot') was constitutional as long as it provided for prompt notice before assessment of storage costs. The court held that New Orleans ordinance 38-274 provided notice sufficient to safeguard due process in the impoundment of unauthorized vehicles (p. 1041). The notice requirement must be strictly followed. The court suggests that notice can be given by a `tow-away zone' sign.
The conclusion we draw is that if a private lot owner notifies owners of unauthorized vehicles through signs that their cars will be towed, then those cars may be towed by the local police. Furthermore, the sign should indicate where the vehicle can be reclaimed, and that the owners will bear the costs of towing. The cost of towing should also be included.
We trust that this answers your opinion request. If you need additional information, please do not hesitate to contact me.
Very truly yours,
William Guste Jr. Attorney General By: Joseph I. Giarrusso, Jr. Staff Attorney *Page 17 
1978-79 La. Op. Atty. Gen. 120, La. Atty. Gen. Op. No. 79-1076,1979 WL 38099 (La.A.G.)
[1] Attorney General Opinion No. 77-383, March 22, 1977, recognized that La. R.S. 14:63.3 would apply to unauthorized parking at the Louisiana Superdome.
[2] The civil action of trespass, a tort, also requires the unlawful physical invasion of another's property. See Dickie's Sportsman's Centers, Inc. v. Department of Transportation 
Development, 477 So. 2d 744, 750-751 (La.Ct.App. 1 Cir. 1985), citing Gliptis v. Fifteen Oil Co., 16 So. 2d 471 (La. 1943), M A Farms, Ltd. V. Town of Ville Platte, 422 So. 2d 708
(La.Ct.App. 3d Cir. 1982); and Patin v. Stockstill, 315 So. 2d 868
(La.Ct.App. 1 Cir. 1975.)